# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 7, 2008          Decided February 3, 2009

No. 07-1385

COUNTY OF DELAWARE, PENNSYLVANIA, A POLITICAL
SUBDIVISION OF THE COMMONWEALTH OF PENNSYLVANIA, ET
AL.,
PETITIONERS

v.

DEPARTMENT OF TRANSPORTATION, ET AL.,
RESPONDENTS

---

On Petition for Review of an Order
of the Federal Aviation Administration

---

*Barbara E. Lichman* argued the cause for petitioners. With her on the briefs were *Berne C. Hart*, *Steven M. Taber*, and *Jeffrey L. Karlin*.

*Lane McFadden*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Ellen J. Durkee*, Attorney, and *Ellen Athas*, Attorney, Federal Aviation Administration. *Ronald M. Spritzer*, Attorney, U.S. Department of Justice, entered an appearance.

Before: SENTELLE, *Chief Judge*, and RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: On July 30, 2007, the Federal Aviation Administration ("FAA") published a notice in the Federal Register entitled *Federal Presumed to Conform Actions Under General Conformity* ("PTC List"). 72 Fed. Reg. 41,565. The PTC List, promulgated by the FAA under authority granted it by the Environmental Protection Agency ("EPA"), *see* 40 C.F.R. §§ 93.153(f)-(h), set forth a list of 15 categories of FAA actions that are presumed to conform to state implementation plans ("SIPs") of national air quality standards in a particular local area. One of the categories that the PTC List deemed "presumed to conform" to any SIP was Category 14: "Air Traffic Control Activities and Adopting Approach, Departure and Enroute Procedures for Air Operations." 72 Fed. Reg. at 41,578. According to the PTC List, alterations in air traffic control activities at airports are presumed to conform to SIPs if the airspace alterations "are designed to enhance operational efficiency (i.e., to reduce delay), increase fuel efficiency, or reduce community noise impacts by means of engine thrust reductions." *Id.* On September 14, 2007, a group of petitioners comprised of public entities, associations, and individuals filed a petition for review with this court, challenging the validity of the PTC List and the FAA's reliance on the PTC List in making alterations to air traffic control routes in two separate instances. We cannot reach the merits of the petitioners' challenge, however, because they have not established that they have met Article III standing requirements. We therefore dismiss their petition for review.

**I.**

The Clean Air Act, 42 U.S.C. §§ 7401-7671q, establishes a joint state and federal program to control the country's air pollution by establishing national air quality standards. Under

this program, states must adopt, and submit to the EPA for approval, SIPs that provide for the implementation, maintenance, and enforcement of these national standards in each of their "air quality control regimes." 42 U.S.C. § 7410(a)(1). Federal agencies must act consistently with these state plans, and may only engage in or approve activities that conform to SIPs. *See* 42 U.S.C. § 7506(c)(1).

The EPA has promulgated regulations to assist federal agencies in determining whether their actions conform with SIPs. *See* 40 C.F.R. § 93.150 *et seq.* According to these general conformity regulations, if an agency's proposed action affects a maintenance or nonattainment area, the agency must determine whether its proposed action conforms to the Clean Air Act. *See* 40 C.F.R. § 93.153(b). In these instances, an agency must make a conformity determination for each pollutant when the total emissions caused by a proposed action would equal or exceed specified emissions levels or would otherwise be deemed regionally significant. *See* 40 C.F.R. §§ 93.153(b), (i). Prior to making a conformity determination, however, agencies must first conduct an applicability analysis to determine whether these thresholds would be exceeded by the proposed action. *See* 40 C.F.R. § 93.153(c). If the applicability analysis reveals that the effect would be at or below *de minimis* levels, then that activity is exempt from the conformity analysis requirement. 40 C.F.R. §§ 93.153(c)(1), (2). Such a conformity analysis is therefore only required if the proposed agency conduct exceeds these *de minimis* levels.

The EPA also promulgated regulations allowing federal agencies to establish categories of actions that are presumed to conform to a SIP, and that therefore do not require either an applicability or conformity determination. *See* 40 C.F.R. §§ 93.153(f)-(h). Following the EPA's prescription, the FAA published the PTC List, which set forth 15 categories of actions

that are presumed to conform to any applicable SIPs. 72 Fed. Reg. 41,565 (July 30, 2007). Because the activities listed on the PTC List were presumed to conform to the SIPs, the FAA determined that they did not require either a conformity determination (Section 93.153(b)) or an applicability analysis (Section 93.153(c)). 72 Fed. Reg. at 41,579. As mentioned previously, Category 14 of the PTC List presumes that changes in air traffic control activities at airports conform to the Clean Air Act if those changes "are designed to enhance operational efficiency (i.e., to reduce delay), increase fuel efficiency, or reduce community noise impacts by means of engine thrust reductions." 72 Fed. Reg. at 41,578.

## II.

Petitioners challenge two recent FAA actions in which the FAA altered the air traffic control activities at airports: (1) a change in departure route at McCarran International Airport in Las Vegas, Nevada ("Las Vegas Project"), and (2) a revision of the airspace in the New York/New Jersey/Philadelphia area ("Airspace Redesign"). The FAA modified its departure procedures according to the Las Vegas Project on March 20, 2007. Before implementing this procedure, the FAA conducted a Draft Supplemental Environmental Assessment of the Las Vegas Project, and later issued a Finding of No Significant Impact as a result of the Las Vegas Project. Both reports were issued in November 2006. The reports concluded that the Las Vegas Project would not result in increased emissions of the relevant pollutants because the Las Vegas Project would cause a "decrease in aircraft emissions of all the criteria and precursor pollutants." Accordingly, the FAA determined that the Las Vegas Project had met the *de minimis* air emission requirement in Section 93.153(c)(2), and therefore was exempt from the conformity analysis requirement under Section 93.153(b).

The FAA implemented the Airspace Redesign on September 28, 2007. The Airspace Redesign was based on over nine years of environmental study, presented in a Draft Environmental Impact Statement in June 2005 and then a Final Environmental Impact Statement in July 2007. In the July 2007 Final Environmental Impact Statement for the Airspace Redesign, the FAA noted that the PTC List had been created in draft form, but was not yet enacted. Accordingly, the FAA conducted a fuel consumption analysis to determine whether the Airspace Redesign would result in emissions that would exceed the applicable *de minimis* emission levels for the surrounding areas. This study concluded that airline fuel consumption would in fact be reduced under the proposed Airspace Redesign, and that this reduction would in turn reduce emissions rather than increase them. The FAA determined, unsurprisingly, that a reduction in emissions was clearly a *de minimis* impact on the emission levels for the areas surrounding the Airspace Redesign. Accordingly, the FAA determined in its Final Environmental Impact Statement that the Airspace Redesign was exempt, under Section 93.153(c), from having to conduct an additional conformity analysis under Section 93.153(b).

Later, the FAA issued a Corrected Record of Decision when several errors or omissions not relevant to this case were discovered. In this Corrected Record of Decision, the FAA reaffirmed its findings in the Final Environmental Impact Statement that the Airspace Redesign was exempt, under Section 93.153(c), from a conformity analysis under Section 93.153(b), because the fuel consumption analysis revealed that the project "would clearly reduce rather than increase emissions." The FAA also noted that, in the time between the issuance of the Final Environmental Impact Statement and the Corrected Record of Decision, the FAA had finally promulgated the PTC List. Accordingly, based on its findings in the Final Environmental Impact Statement, and the new promulgation of

the PTC List, the FAA found that the Airspace Redesign was "either exempt or presumed to conform under" the PTC List.

Shortly after these two airspace alterations were implemented, two petitioners (City of Las Vegas and Nevada Environmental Coalition) and others not represented here filed a petition for review of the Las Vegas Project in the Ninth Circuit. That petition is currently awaiting resolution. Twelve groups of petitioners, including two from this case (County of Delaware and Heinz Wildlife Refuge), filed with this court a similar petition for review of the Airspace Redesign. Final briefs are due in that case by March 3, 2009.

In the present case, the petitioners do not challenge the substantive merits of either airspace alteration, or the FAA's findings and conclusions in implementing the projects. Rather, the petitioners challenge the validity of the PTC List, and argue that the FAA's reliance on the PTC List in enacting the Las Vegas Project and the Airspace Redesign caused the FAA to disregard its obligations under the Clean Air Act to provide a complete analysis of the potential adverse impacts on the air quality of the areas surrounding these airspace alterations. This, in turn, injures the County of Delaware and the City of Las Vegas ("public entity petitioners") because they are unable to determine whether the quality of the air that they govern is in compliance with their respective SIPs. The remaining petitioners are also injured because they are at increased risk of being affected by unquantified aircraft emissions, which could affect the quality of the air they breathe.

## III.

Article III of the United States Constitution limits the role of the federal judiciary to resolving cases and controversies. U.S. Const. art. III, § 2; *see, e.g.*, *Chicago & Grand Truck Ry.*

*Co. v. Wellman*, 143 U.S. 339, 345 (1892). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly litigants must show that they have standing to appear before this court before we may exercise jurisdiction over any of their claims. *Id.*

In order to establish the "'irreducible constitutional minimum of standing,'" a party must demonstrate "that it has suffered a 'concrete and particularized' injury that is: [1] actual or imminent [2] caused by or fairly traceable to the act being challenged in the litigation, and [3] redressable by the court." *City of Dania Beach v. FAA*, 485 F.3d 1181, 1185 (D.C. Cir. 2007) (citing *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)); *see also Defenders of Wildlife*, 504 U.S. at 560-61. According to *Defenders of Wildlife*, a litigant may also have standing to challenge an agency's failure to abide by a procedural requirement, provided that this requirement was "designed to protect some threatened concrete interest" of the litigant. *Defenders of Wildlife*, 504 U.S. at 573 n.8; *see Fla. Audubon Soc'y*, 94 F.3d at 664-65. To demonstrate standing in such cases, it is not enough to show that the agency omitted some procedural requirement; to establish a so-called procedural injury, the plaintiff must also show that it is "substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." *Fla. Audubon Soc'y*, 94 F.3d at 665. However, a litigant "who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result." *Sugar Cane Growers Coop. of Fla v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002). This court must dismiss the petition if any element of constitutional standing is found lacking. In this case,

the petition for review must be dismissed because it fails to meet both the causation and redressability requirements.

### Causation

First, the petitioners have failed to establish that their injury was caused by the FAA's promulgation of and reliance on the PTC List in enacting these two airspace alterations. In order to establish causation sufficient for standing, a plaintiff asserting procedural injuries must demonstrate that there is a "substantial probability that the substantive agency action that disregarded a procedural requirement created a demonstrable risk . . . of injury to the particularized interests of the plaintiff." *Fla. Audubon Soc'y*, 94 F.3d at 669 (citation omitted); *see also Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1167 (D.C. Cir. 2005) (explaining standard for establishing causation in procedural injury cases). Here, the petitioners' affidavits assert that their alleged injuries are caused by the PTC List because the FAA relied on the PTC List when it implemented the Airspace Redesign and the Las Vegas Project, which in turn increased the risk of potentially adverse effects that these two airspace alterations would have on the areas in which the petitioners live.

This argument has no support in the record. The record reveals that the FAA did not rely on the promulgated PTC List in issuing either airspace alteration, and that the applicability analyses supporting an exemption for both airspace alterations predated the promulgation of the PTC List. The PTC List was officially promulgated on July 30, 2007. 72 Fed. Reg. 41,565. Based on this fact alone, the FAA clearly did not—and could not—rely on the finalized PTC List in undertaking the two airspace alterations. In fact, the Las Vegas Project predates the promulgation of the PTC List by eight months. Both the Final Supplemental Environmental Assessment and the Record of Decision for the Las Vegas Project were issued in November

2006. Similarly, the Final Environmental Impact Statement for the Airspace Redesign was issued in July 2007, prior to the promulgation of the final PTC List later that month.

The petitioners point to two statements by the FAA as evidence that the PTC List did *not*, in fact, predate the issuance of the Las Vegas Project or the Airspace Redesign, and that, consequently, the FAA's reliance on the PTC List caused the petitioners' injuries. First, the petitioners point to the FAA's statement in an opposition brief in the Ninth Circuit challenge to the Las Vegas Project asking the Ninth Circuit to apply the PTC List in that matter. Petitioners argue that this is evidence that the FAA believed the PTC List applied when it issued the Las Vegas Project. This argument is ludicrous. An agency relies on a rule at the point that the rule is final, not before. It is undisputed that the Las Vegas Project was enacted eight months before the PTC List was promulgated. A statement from a parties' brief in a wholly separate matter, taken out of context, does not alter this finding. Therefore, the petitioners have not—and cannot—establish a causal link between the PTC List and the issuance of the Las Vegas Project.

Second, the petitioners point to a sentence in the FAA's Corrected Record of Decision for the Airspace Redesign—which was issued in September 2007, *after* the PTC List was promulgated—as proof that the FAA relied on the PTC List in enacting the Airspace Redesign. In the Corrected Record of Decision, the FAA stated that "[b]ased upon the [Environmental Impact Statement, issued in July 2007,] . . . the proposed airspace redesign alternatives and the selected project are either exempt *or presumed to conform under the [now-finalized PTC List]*." This statement, the petitioners argue, clearly establishes that the FAA relied on the PTC List in enacting the Airspace Redesign, at least in part, because the FAA stated that the Airspace Redesign was "presumed to

conform" under the PTC List. The only reason that such a presumption would be used in this way would be if the presumption were part of a finalized rule, and the FAA relied on that rule. Therefore, the petitioners argue that their injuries arising out of the Airspace Redesign were caused by the PTC List because the FAA relied on the presumption of conformity set forth therein when it issued the Corrected Record of Decision for the Airspace Redesign.

The court is not moved. In its Corrected Record of Decision for the Airspace Redesign, the FAA indicated that the Airspace Redesign's presumption of conformity was but one of *two* alternative grounds on which it based its finding that there was no significant adverse environmental impact caused by the Airspace Redesign. As mentioned previously, the FAA also conducted an independent fuel burn analysis of the previous air traffic design versus that under the proposed Airspace Redesign. Based on this analysis, the FAA concluded that the Airspace Redesign "would clearly reduce rather than increase emissions." As a result, the FAA determined that the Airspace Redesign was exempt under Section 93.153(c) from conducting a full conformity analysis under Section 93.153(b). The petitioners have not challenged either the validity of these findings or the FAA's conclusions from it. Accordingly, we must assume that both the study and the FAA's conclusions are valid. *See City of Cleveland, Ohio v. FERC*, 773 F.2d 1368, 1374 (D.C. Cir. 1985). We must also assume, at least for the purposes of this standing analysis, that the FAA's unchallenged finding that the Airspace Redesign was exempt under Section 93.153(c) was valid. Because the FAA rested its finding on a valid ground that did not involve the PTC List, it is irrelevant whether the FAA found in the alternative that it did not have to conduct a full conformity analysis because the PTC List allowed it. Even if this alternative determination were incorrect, and we do not speak to whether it is, the FAA's valid finding that the Airspace

Redesign was exempt under Section 93.153(c) establishes that the FAA's approval of the Airspace Redesign without conducting a full conformity analysis would still stand. Accordingly, the petitioners cannot establish that their alleged injuries were caused by the FAA's reliance on the PTC List in enacting the two airspace alterations at issue.

**Redressability**

Finally, the petitioners have also failed to establish that this court can, in this action, actually redress any injury to the petitioners that might have been caused by the FAA's promulgation of the PTC List. We reach this conclusion for the same reasons set forth in our discussion of the causation element.

In order to determine redressability, the court must examine "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged." *Fla. Audubon Soc'y*, 94 F.3d at 663-64 (footnote omitted) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38-39 (1976)). Here, the petitioners seek to overturn the PTC List and remand the FAA's two airspace redesigns so that the FAA may be forced to conduct additional analyses surrounding the two redesigns. Accordingly, the court's redressability determination depends on whether overturning the PTC List would likely alleviate the petitioners' injuries.

Overturning the PTC List will not redress the petitioners' harm. As mentioned previously, the FAA did not—and could not—rely on the PTC List in enacting the Las Vegas Project or the Airspace Redesign. Rather, the FAA relied on other independent analyses to support its decision to enact the two redesigns without conducting an additional and more encompassing conformity analysis under Section 93.153(b).

Therefore, even if this Court were to overturn the PTC List, the FAA would still not be required to conduct additional analyses, because the FAA already conducted these analyses and found them to be sufficient support for enacting the two redesigns. The law does not require them to do more. *See* 40 C.F.R. § 93.153(c). If the petitioners have redress, it must be by a direct challenge to the merits of the two redesigns—something the petitioners have already undertaken in both the Ninth Circuit and this Circuit. Accordingly, the petitioners also lack standing because their injuries cannot be redressed here.

## IV.

Because the petitioners have failed to establish that they have standing to appear before this court, their petition for review of the PTC List is hereby dismissed.