# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 13, 2011       Decided February 11, 2011

No. 09-1309

NEW YORK REGIONAL INTERCONNECT, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CENTRAL HUDSON GAS & ELECTRIC CORPORATION, ET AL.,
INTERVENORS

---

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

---

*William D. Booth* argued the cause for petitioner. With him on the briefs was *Jennifer A. Morrissey.*

*Donald K. Dankner* and *Raymond Wuslich* were on the brief for intervenor Central Hudson Gas & Electric Corporation in support of petitioner.

*Albert A. Foer* was on the brief for *amicus curiae* American Antitrust Institute in support of petitioner.

*Eugene Grace* was on the brief for *amicus curiae* American Wind Energy Association

*Holly E. Cafer*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Thomas R. Sheets*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Joseph J. Saltarelli* argued the cause for intervenors New York Independent System Operator, Inc., et al. With him on the joint brief were *Jodi L. Moskowitz*, *Joseph B. Nelson*, and *Neil H. Butterklee*. *Tamara L. Linde*, *William F. Young*, and *Brian M. Zimmet* entered appearances.

Before: SENTELLE, *Chief Judge*, HENDERSON, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Petitioner, New York Regional Interconnect, Inc. ("NYRI"), is a New York corporation whose sole business is the development, construction, operation, and maintenance of a future high-voltage transmission line in the state of New York. The high-voltage transmission line contemplated by NYRI would be within the jurisdiction of the New York ISO—an independent regional transmission organization that operates, but does not own, the power transmission system in New York state. NYRI petitions for review of a series of three Federal Energy Regulatory Commission ("FERC" or the "Commission") orders that adopted a new transmission planning process for the New York ISO. NYRI, however, does not have standing to seek review of the challenged FERC orders, so we dismiss its petition for review for lack of jurisdiction.

**I.**

This case, like many petitions to review the Commission's orders, necessitates a brief review of the regulatory background of federal energy law. In its landmark Order No. 888, the Commission ordered the national deregulation of electricity transmission services and required the vertically-integrated power utilities to unbundle their electricity generation and transmission services. *See Sacramento Mun. Util. Dist. v. F.E.R.C.*, 428 F.3d 294, 295-96 (D.C. Cir. 2005) (citing *Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, Order No. 888, 61 Fed. Reg. 21540 (Apr. 24, 1996) (hereinafter "Order No. 888")). "As part of Order 888, FERC adopted a pro forma Open Access Transmission Tariff (OATT), containing minimum terms and conditions for non-discriminatory service, which every transmission-owning public utility must file with the Commission and by which it must abide in providing transmission services to itself and others." *Transmission Access Policy Study Grp. v. F.E.R.C.*, 225 F.3d 667, 727 (D.C. Cir. 2000).

In an additional effort to increase competition in the power transmission market, Order No. 888 encouraged the development of independent system operators ("ISOs"). *See Cal. Indep. Sys. Operator Corp. v. F.E.R.C.*, 372 F.3d 395, 396-97 (D.C. Cir. 2004). An ISO takes operational control of the combined transmission grid, but ownership of the transmission facilities is retained by the public utilities. This arrangement separates operation of the transmission grid and access to it from economic interests in generation. *See* Order No. 888 at 21551 (describing operational unbundling). The Commission "deems it crucial that an ISO be independent of

the market participants so that decisions of policy, operation, and dispute resolution be free of the discriminatory impetus inherent in the old system." *Cal. Indep. Sys. Operator Corp.*, 372 F.3d at 397.

In accordance with Order No. 888, the bulk power transmission system in the state of New York is operated, but not owned, by an independent, non-profit corporation, the New York Independent System Operator ("New York ISO"). Among its many other duties, the New York ISO is required by the Commission to develop a region-wide OATT, a rate system for all transmission services provided within its jurisdiction. The New York ISO's OATT is regulated by the Commission and must be consistent with or superior to the Commission's *pro forma* OATT. Order No. 888 at 21618-19.

In 2007, a decade after Order No. 888 took effect, the Commission promulgated Order No. 890 to address and remedy "opportunities for undue discrimination under the *pro forma* Open Access Transmission Tariff (OATT) adopted in 1996 by Order No. 888." *Preventing Undue Discrimination and Preference in Transmission Service*, Order No. 890, 72 Fed. Reg. 12266, 12267 (P1) (Mar. 15, 2007), *order on reh'g*, Order No. 890-A, 73 Fed. Reg. 2984 (Jan. 16, 2008), *order on reh'g*, Order No. 890-B, 123 FERC ¶ 61,299 (2008), *order on reh'g*, Order No. 890-C, 126 FERC ¶ 61,228 (2009) (hereinafter "Order No. 890"). To achieve this goal, the Commission concluded "that it [was] necessary to amend the existing *pro forma* OATT to require coordinated, open, and transparent transmission planning on both a local and regional level." *Id*. at 12320 (P 435). Order No. 890 required ISOs, including the New York ISO, either to submit a compliance filing establishing that their existing transmission planning process was consistent with or superior to the reformed *pro forma* OATT, or to submit a proposal for a new planning

process that was consistent with or superior to the reformed *pro forma* OATT. *Id*. at 12320 (P 437).

One of the changes made to the *pro forma* OATT implemented by Order No. 890 was a requirement "for public utilities to develop cost allocation principles to address the recovery of costs associated with new transmission projects." *Id*. at 12335-36 (PP 552-61). The Commission declined to prescribe any specific cost allocation methodology, stating that it would allow "transmission providers and stakeholders to determine their own specific criteria which best fit their own experience and regional needs." *Id*. at 12335-36 (PP 557-58). The Commission advised, however, that it would consider three factors when adjudicating any future disputes over cost allocation proposals: (1) whether the proposal "fairly assigns costs among participants, including those who cause them to be incurred and those who otherwise benefit from them;" (2) whether the "proposal provides adequate incentives to construct new transmission;" and (3) "whether the proposal is generally supported by State authorities and participants across the region." *Id*. at 12336 (P 559).

In response to the cost allocation requirement in Order No. 890, the New York ISO proposed revisions to its OATT "to incorporate an enhanced economic planning process" that established a method by which the costs of new transmission projects—such as the multi-billion dollar, 190-mile, high-voltage transmission line contemplated by NYRI—might be recovered directly from the New York ISO's transmission customers. *Order No. 890 Transmission Planning Compliance Filing* at 1, 14-15, FERC Docket No. 0A08-52-000 (Dec. 7, 2007). Under the New York ISO's proposal, a transmission project approved under the new economic planning process would be implemented and its

costs would be allocated to the New York ISO transmission customers who benefit from the project's construction. Those customers would repay the costs through increases in the rates they pay to the New York ISO for transmission services. The magnitude of each customer's rate increase would be proportional to the economic benefits provided to the customer by the new project. *Id*. at 14-15.

Under the New York ISO's proposal, however, only some transmission projects would qualify for reimbursement through the OATT. To receive reimbursement, the project must meet two requirements. First, the New York ISO must determine that the project will have a "production cost benefit." *Id*. at 14. Under the terms of the proposed planning process, a project has a production cost benefit if the forecasted production cost savings over the first ten years of the project's in-service life outweigh the project's costs. *Id*. Projects with a production cost benefit would be eligible for cost recovery through the OATT, pending the determination of the second criterion, but those determined to have no production cost benefit would be denied mandatory cost allocation.

In addition to having a production cost benefit, new transmission projects must also be approved by a supermajority of the project's beneficiaries—those entities that would benefit economically from the project and from whom the project's costs would be recovered. *Id*. at 14-15. The New York ISO would provide information about the proposed project to the beneficiaries, including estimates of both economic and non-quantifiable benefits, such as environmental impacts and renewable integration. *Id*. The beneficiaries would then vote to determine whether the proposed project should receive cost allocation, with each beneficiary's vote weighted to correspond to its share of the

project's benefits and costs. *Id*. at 15. Projects approved by at least eighty percent of the beneficiaries would be implemented and cost allocation through the OATT would be approved. *Id*.

NYRI, which presumably wishes to obtain cost allocation for its proposed high-voltage transmission line through the New York ISO's OATT, opposed the New York ISO's proposal at every stage of the administrative process. In July 2008, NYRI filed a protest to the New York ISO's Order No. 890 compliance filing. *See Motion to Intervene and Protest of New York Regional Interconnect, Inc.*, FERC Docket No. OA08-52-000 (July 9, 2008). After the Commission approved the New York ISO's transmission planning process in the first of the three orders challenged by NYRI, *New York Independent System Operator, Inc.*, 125 FERC ¶ 61,068 (2008), NYRI requested a rehearing. *See Request for Rehearing or Clarifying Action and Expedited Action of the New York Regional Interconnect, Inc.*, FERC Docket No. OA08-52-000 (Nov. 17, 2008). In the second of the three challenged orders, the Commission denied NYRI's request for rehearing. *See New York Independent System Operator, Inc.*, 126 FERC ¶ 61,320 (2009). Undaunted, NYRI requested rehearing of the second order, *see Request for Rehearing and Motion to Reopen the Record of the New York Regional Interconnect, Inc.*, FERC Docket No. OA08-52-003 (Apr. 29, 2009), which the Commission denied in the third of the three challenged orders, *see New York Independent System Operator, Inc.*, 125 FERC ¶ 61,045 (2009). NYRI now requests that this court review these three orders, arguing that the Commission acted arbitrarily and capriciously when it approved the New York ISO's new transmission planning process.

## II.

Before this court can consider the merits of NYRI's petition, there is a threshold issue that we must resolve. Certain intervenors in this case—the New York ISO and several participants in the New York power market—argue that NYRI lacks standing to petition this court to review the FERC orders because NYRI has not been "aggrieved" by those orders as required by the Federal Power Act.[1] Because standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), NYRI must demonstrate that it has standing to raise this challenge before we may exercise jurisdiction over its claims. *County of Delaware, Pa. v. Dep't of Transp.*, 554 F.3d 143, 147 (D.C. Cir. 2009).

Section 313 of the Federal Power Act provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order . . . in the United States Court of Appeals for the District of Columbia." 16 U.S.C. § 825*l*(b). Parties are "aggrieved" under the Federal Power Act if they satisfy both the constitutional and prudential requirements for standing. *Exxon Mobil Corp. v. F.E.R.C.*, 571 F.3d 1208, 1219 (D.C. Cir. 2009); *Hydro Investors, Inc. v. F.E.R.C.*, 351 F.3d 1192, 1195 (D.C. Cir. 2003). "'The requirement of aggrievement serves to distinguish a person with a direct stake in the outcome of a litigation from a person with a mere interest in the problem.'" *City of Orrville, Ohio v. F.E.R.C.*, 147 F.3d 979, 985 (D.C. Cir. 1998) (quoting *N.C. Utils. Comm'n v. F.E.R.C.*, 653 F.2d 655, 662 (D.C. Cir. 1981)). "[A] party does not acquire such a 'direct stake in a litigation'

---

[1] Although the Commission failed to raise the issue in its brief, at oral argument the Commission joined the intervenors in asserting that NYRI has no standing before this court.

simply by participating in the antecedent administrative proceedings whence the litigation arises; it must establish its constitutional and prudential standing." *City of Orrville*, 147 F.3d at 985.

It is well established "that the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. "To establish constitutional standing, a petitioner must show an actual or imminent injury in fact, fairly traceable to the challenged agency action, that will likely be redressed by a favorable decision." *Exxon Mobil Corp.*, 571 F.3d at 1219 (citing *Lujan*, 504 U.S. at 560-61). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations and citations omitted). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Id*. at 560 n.1.

The intervenors and the Commission argue that NYRI has no standing before this court because it cannot show that it has suffered an injury in fact. This is so, they contend, because NYRI does not have any active proposals for new transmission projects that would be affected by the challenged FERC orders. Although NYRI previously submitted an application to the New York Public Service Commission for the construction of a new high-voltage transmission line, NYRI admits that it withdrew that application on April 9, 2009. Final Reply Br. of New York Regional Interconnect, Inc. at 19, *N.Y. Reg'l Interconnect, Inc. v. F.E.R.C.*, No. 09-1309 (D.C. Cir. Nov. 9, 2010).

In response, NYRI argues that it has standing to challenge FERC's orders because it "has suffered injury to a protected interest, i.e., an interest that is 'within the zone of

interests to be protected or regulated by FERC under' the applicable statute." *Id*. at 16 (quoting *Moreau v. F.E.R.C.*, 982 F.2d 556, 564 (D.C. Cir. 1993)). Specifically, NYRI asserts that the alleged injury to its interest in "an impartial assessment of its proposed project" gives it standing to challenge the FERC orders adopting the new transmission planning process for the New York ISO. *Id*. We disagree.

NYRI cannot establish constitutional standing because it has suffered no actual or imminent injury in fact to a judicially cognizable interest. Although NYRI argues that the Commission's rulings have caused it to suffer a concrete injury to its protected interest in "an impartial assessment of its proposed project," this alleged injury rests upon a hypothetical chain of events, none of which is certain to occur. Under NYRI's theory, *if* NYRI proceeds with a transmission project within the New York ISO's jurisdiction, and *if* that proposal obtains siting and permitting from the New York Public Service Commission, and *if* NYRI applies for cost allocation through the New York ISO OATT, then NYRI will be harmed because *either* the New York ISO will wrongfully determine that the benefits of the project do not outweigh the costs, *or* the project's beneficiaries will wrongfully vote against the project. This theory stacks speculation upon hypothetical upon speculation, which does not establish an "actual or imminent" injury. *See Lujan*, 504 U.S. at 560.

NYRI has presented at most an allegation of injury to its procedural rights. It is true that "a plaintiff may have standing if it can show that an agency failed to abide by a procedural requirement that was 'designed to protect some threatened concrete interest' of the plaintiff." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009) (quoting *Lujan*, 504 U.S. at 573 n.8). But it is also

11

true that "the omission of a procedural requirement does not, by itself, give a party standing to sue." *Id.* Even "a procedural-rights plaintiff must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664-65 (D.C. Cir. 1996). Petitioner has made no such showing.

Without an active application for a transmission project in the New York ISO, nothing distinguishes NYRI from any other party who might someday wish to build a high-voltage transmission line in New York. *See Lujan*, 504 U.S. at 560 n.1 (holding that an injury in fact must "affect the plaintiff in a personal and individual way"). NYRI does not currently participate in the New York power generation and transmission market in any manner, either as a generator or as a transmission owning entity. The challenged FERC orders do not place any legal burden on NYRI or determine any legal rights. The orders merely change the criteria by which future transmission projects will be evaluated when the New York ISO decides whether those projects will be eligible to receive cost allocation through the FERC-approved tariff. Although NYRI argues that the FERC orders create practical, rather than legal, hurdles that will impede its plan to build a new high-voltage transmission line in New York, a practical obstacle is not necessarily coterminous with a cognizable injury in fact that is necessary to support Article III standing. NYRI has not suffered an injury in fact and even the alleged injury is only conjectural. Without an actual injury, NYRI does not have constitutional standing to challenge the FERC orders and its petition must be dismissed.

12

**III.**

For the reasons set forth above, we hold that NYRI has no standing to bring this action. The petition for review is dismissed.