KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring in the judgment:
Although I join in the judgment vacating EPA’s “Determination,” 76 Fed.Reg. 15,-308 (Mar. 21, 2011), I write separately because I believe that Article III standing is far from certain.
“Article III of the Constitution limits the judicial power of the United States to the resolution of ‘Cases’ and ‘Controversies.’ ” Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 597, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007). By limiting the jurisdiction of federal courts to the consideration of cases and controversies, the standing doctrine ensures that the judiciary does not spill the banks of its Article III authority. Allen v. Wright, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); Pub. Citizen, Inc. v. Nat’l Highway Traffic Safety Admin., 489 F.3d 1279, 1289 (D.C.Cir.2007). Because the doctrine implicates this fundamental caution about the judiciary’s constitutional role, we address standing with considerable care. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
*536 A party seeking to invoke the power of an Article III court must establish the “irreducible constitutional minim[a] of standing,” to wit, injury in fact, causation and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). I agree with my colleagues that Sierra Club establishes an injury in fact which, assuming its success on the merits, is caused by EPA’s failure to engage in the notice-and-eomment procedures required by the Administrative Procedure Act (APA), 5 U.S.C. § 553. I suspect, however, that today’s decision will most likely provide no relief for that injury.
Section 112(c)(6) of the Clean Air Act (Act) requires EPA to assure that “not less than 90 per centum of the aggregate emissions of each such pollutant are subject to standards under subsection (d)(2) or (d)(4).” 42 U.S.C. § 7412(c)(6). That is all it requires. EPA is under no obligation, statutory or otherwise, to inform anyone that it has satisfied the requirements of section 112(c)(6). The issuance of the Determination was purely voluntary, amounting to little more than a public service message.[1]
Given that EPA was not required to issue the Determination, I am doubtful our decision will redress Sierra Club’s injury. My colleagues correctly note that a party alleging a procedural injury is not required to show that the agency’s decision would have been different had it adhered to the APA. Cnty. of Delaware, Pa. v. Dep’t of Transp., 554 F.3d 143, 147 (D.C.Cir.2009) (“[A] litigant ‘who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary to show is that the procedural step was connected to the substantive result.’ ”) (quoting Sugar Cane Growers Coop. of Fla. v. Veneman, 289 F.3d 89, 94-95 (D.C.Cir.2002)). Even so, I cannot escape the conclusion that redress is most likely “merely speculative” as opposed to “likely.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130 (quotation marks omitted). Because EPA’s compliance with section 112(c)(6) does not rest on the issuance of the Determination, it is likely that, on remand, EPA will simply abandon the Determination rather than undertake the expensive and cumbersome notice-and-comment procedures imposed by section 553 of the APA. The upshot would be that EPA will continue to decline to issue regulations and Sierra Club’s alleged injury will remain unredressed.[2]
*537 My colleagues believe that the “deadline suit” in the district court, apparently still pending, obviates my concern. In a footnote included in its district court brief in that case, EPA stated its intention to issue a notice explaining that it had satisfied its section 112(c)(6) obligations. Maj. Op. 532 (quoting Def.’s Mem. in Supp. of Cross-Mot. for Summ. J. on Remedy 19 n. 16, Sierra Club v. Johnson, No. 01-1537 (D.D.C. Jun. 13, 2005)). The district court ordered EPA to comply with the requirements of section 112(c)(6) but declined either to instruct EPA on how to comply or to review the substance of any regulations relied upon by EPA to satisfy section 112(c)(6), concluding that both actions were beyond its jurisdiction. Sierra Club v. Johnson, 444 F.Supp.2d 46, 59-60 (D.D.C. 2006).[3] The district court did not instruct EPA to issue .the Determination but merely to “assure that sources accounting for ninety percent of the aggregate emissions of certain persistent and bioaccumulative hazardous air pollutants are subject to emission standards with respect to such pollutants.” Order at 2, Sierra Club v. Johnson, No. 01-1537 (D.D.C. Mar. 31, 2006).
My colleagues conclude that “our vacatur order will require EPA, consistent with the District Court’s deadline order, to entertain and respond to the Club’s claims about the necessary scope and stringency of the standards.” Maj. Op. 533. I am unconvinced. If EPA declines to issue the Determination, Sierra Club will presumably return to district court to enforce the deadline order, as it has done before. See *538 Mot. to Enforce Order of Jan. 20, 2011, Sierra Club v. Jackson, No. 01-1537 (D.D.C. Aug. 3, 2011). EPA will presumably defend against enforcement with the Technical Memorandum (prepared in order to support the Determination) showing how it has satisfied the district court’s order. See Maj. Op. 532-33. If the district court is correct about its jurisdiction under the Act, it cannot review the standards on which EPA relies. See Johnson, 444 F.Supp.2d at 59-60. Nor can we, because judicial review of the standards that Sierra Club previously failed to challenge would violate the sixty-day deadline imposed by section 307(b)(1) of the Act. 42 U.S.C. § 7607(b)(1). The proper recourse for Sierra Club will then be to petition for reconsideration of those standards or for a new rulemaking. See Oljato Chapter of Navajo Tribe v. Train, 515 F.2d 654, 666 (D.C.Cir.1975); see also RSR Corp. v. EPA, 102 F.3d 1266, 1270 (D.C.Cir.1997). If, after consideration of Sierra Club’s comments, EPA denies the petition, we may review the denial and — if persuaded— grant Sierra Club the relief it seeks. Although the administrative petition process — like my colleagues’ hoped-for result arising from remand — will enable Sierra Club to make known its concerns to EPA, I doubt that EPA will permit Sierra Club to short circuit that process by reissuing the Determination after notice and comment. Remand is thus unlikely to provide Sierra Club redress.
The possibility that an agency will abandon a rulemaking after we vacate and remand a procedurally deficient rule exists, of course, whenever we impose this remedy. See, e.g., Chamber of Commerce of U.S. v. U.S. Dep’t of Labor, 174 F.3d 206 (D.C.Cir.1999) (vacating OSHA rule for lack of notice-and-comment, which rule OSHA subsequently abandoned); Orly Lobel, Interlocking Regulatory and Industrial Relations: The Governance of Workplace Safety, 57 Admin. L.Rev. 1071, 1124 (2005) (describing OSHA’s abandonment of rule after vacatur); see also Natural Res. Def. Council v. EPA, 489 F.3d 1250, 1265 (D.C.Cir.2007) (noting that agency may “abandon its initial rule” after vacatur); Kristina Daugirdas, Note, Evaluating Remand Without Vacatur: A New Judicial Remedy for Defective Agency Rulemakings, 80 N.Y.U. L.Rev. 278, 279 (2005). Because vacating the Determination leaves unstated but intact EPA’s underlying conclusion that it has satisfied section 112(c)(6), I expect that abandonment will occur here. We have never, however, required a petitioner challenging agency action to show that the agency will not abandon the rulemaking after vacatur and remand — nor could we — and I would not seek to impose that requirement here. Accordingly, I concur in the judgment of the Court.

. This conclusion also implicates another jurisdictional concern, viz., whether the Determination was "final action” within the meaning of section 307 of the Act. See Nat’l Envtl. Dev. Ass'n's Clean Air Project v. EPA, 686 F.3d 803, 808 (D.C.Cir.2012). Because it is uncertain that the Determination accomplishes anything, it is also unclear that it is "one by which rights or obligations have been determined or from which legal consequences will flow.” Bennett v. Spear, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quotation marks omitted). Nevertheless, I accept what 1 believe to be my colleagues' conclusion that the Determination has altered the legal landscape by "taking previous rulemakings and repurposing them to satisfy § 112(c)(6)." Maj. Op. 535.

. In its abbreviated standing discussion, my colleagues appear to conflate the two distinct standing prongs of injury in fact and redressability by stating without explaining that Sierra Club suffers a "clearly redressable injury!] given that some Sierra Club members live within zones they claim are exposed to § 112(c)(6) HAPs.” Maj. Op. 533. Exposure to section 112(c)(6) HAPs plainly constitutes an injury in fact. See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And such injury is obviously redress-able by an order to promulgate regulations. But that is not what our vacatur order accomplishes. Our instruction to EPA is merely that, before it promulgates a notice of this *537 kind, it must do so pursuant to the APA's notice-and-comment procedures. EPA may simply choose to withdraw the notice altogether and rest on its internal conclusion that it has satisfied section 112(c)(6), forcing Sierra Club to seek some other form of redress.
Similarly, the dicta hypothetical discussed in the Lujan footnote on which my colleagues rely is distinguishable. See Maj. Op. 532-33 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 n. 7, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). They compare Sierra Club's alleged procedural deprivation to a hypothetical agency's failure to prepare an environmental impact statement before construction of a federally licensed dam. An adjacent landowner could challenge the agency’s failure without showing that his input into the statement’s preparation would result in the denial of the license. Lujan, 504 U.S. at 572 n. 7, 112 S.Ct. 2130. But as Justice Scalia noted, the environmental impact statement is a procedural requirement. Id. at 572, 112 S.Ct. 2130. Thus, in order to proceed with licensure and construction, the agency must allow the landowner to make known his concerns. But here, because the Determination is not required by statute, EPA may give up the Determination entirely and at the same time cease promulgating section 112(c)(6) regulations. The distinction is thus that the hypothetical agency in Lujan may not accomplish its goal — licensure or construction— without at least knowing the injured party's concerns. By abandoning the Determination, EPA may accomplish its goal — no promulgation of additional regulations pursuant to section 112(c)(6) — without regard to Sierra Club's concerns.

. My colleagues make much of the fact that EPA assured Sierra Club and the district court that it intended to issue the Determination, which would be reviewable in this Court. Maj. Op. 532. This seems of little consequence to me. First, the district court did not rely on EPA’s assurance to reach its ultimate conclusion that it could not review the standards on which EPA relied to satisfy section 112(c)(6) because it lacked jurisdiction. Johnson, 444 F.Supp.2d at 59-60. Second, EPA cannot stipulate to the finality of the Determination because finality implicates our jurisdiction, which my colleagues acknowledge we must resolve ourselves. See Maj. Op. 534; see also Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself ... of its own jurisdiction ... ’ even though the parties are prepared to concede it.”) (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)).