# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted October 18, 2022            Decided July 7, 2023

No. 21-1192

HECATE ENERGY GREENE COUNTY 3 LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NEW YORK INDEPENDENT SYSTEM OPERATOR, INC.,
INTERVENOR

———

Consolidated with 21-1274

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*William M. Rappolt* and *Mark F. Sundback* were on the briefs for petitioner.

*Matthew R. Christiansen*, General Counsel, Federal Energy Regulatory Commission, *Robert H. Solomon*, Solicitor, and *Matthew W.S. Estes*, Attorney, were on the brief for respondent.

*C. Dixon Wallace III, John Lee Shepherd, Jr.*, *Ted J. Murphy*, and *Brian M. Zimmet* were on the brief for intervenor New York Independent System Operator, Inc. in support of respondent.

Before: MILLETT, WALKER and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Because electricity-transmission grids are expensive and difficult to build, grid operators can be natural monopolists. To ensure that consumers do not pay monopoly prices, Congress requires transmission operators to charge reasonable rates. And tariffs containing those rates must be filed with the Federal Energy Regulatory Commission before they are levied on generators.

Here, a generator, Hecate Energy, accuses a transmission-grid operator, the New York Independent System Operator, of charging a rate that it had not filed with FERC. Hecate complains that the System Operator's filed tariff was not detailed enough. So it says it was surprised when the System Operator charged it $10 million in grid-upgrade costs to connect its power plant to the grid.[1]

FERC rejected that argument, finding that the tariff put Hecate on notice. Unsatisfied, Hecate petitioned this court for judicial review. Because we agree with FERC that the System

---

[1] Curious readers might wonder how "Hecate" is pronounced. It's "HEK-a-tee," like the Greek goddess of magic, not "HEK-ut," like the ruler of the witches in Shakespeare's *Macbeth*.

Operator's tariff had enough detail to fairly inform Hecate, we deny Hecate's petitions for review.[2]

## I

### A

To supply power to consumers, electricity generators (like Hecate) must connect to the transmission grid. Transmission-grid operators set the terms under which generators connect to the grid. Those terms are contained in a document called a tariff.

But transmission operators do not have a free hand in setting the terms in the tariff. Under the Federal Power Act, "[a]ll rates and charges" and "all rules and regulations affecting . . . such rates" must be "just and reasonable." 16 U.S.C. § 824d(a). Plus, transmission operators must "file . . . all rates and charges" with FERC. *Id.* § 824d(c). Because the terms for connecting to the grid are "rules . . . affecting . . . such rates," they must be filed. *Id.* § 824d(a).

This case concerns the scope of that requirement. How detailed must the tariff be?

---

[2] Hecate filed two petitions for review in this court. It filed the first petition after FERC did not act on its rehearing request within thirty days. *See* 16 U.S.C. § 825l(a) (rehearing request is "deemed to have been denied" if FERC does not act on it "within thirty days"). It filed the second petition after FERC eventually addressed Hecate's rehearing arguments. We address both petitions here.

4

B

Hecate is a power-plant developer. It plans to build a solar facility in New York. To sell electricity, it must connect its facility to New York's interstate-transmission grid.

That grid is managed by the System Operator. The System Operator is "an independent regional transmission organization that operates, but does not own, the power transmission system in New York state."[3] *New York Regional Interconnect, Inc. v. FERC*, 634 F.3d 581, 583 (D.C. Cir. 2011).

Following rules set out in a tariff filed with FERC, the System Operator processes generators' grid-connection requests. It first assigns a queue position to each request. Then it conducts an "interconnection study" to determine the impact the connection will have on the grid. If the proposed connection requires grid upgrades, the owner of the new connection must pay for them. If it refuses, it cannot connect to the grid.

In line with that process, the System Operator gave Hecate a queue position and performed an interconnection study for Hecate's solar facility. To figure out Hecate's impact on the grid, the System Operator first developed a "base case" — that is, a model of the expected strain on the grid without the power from Hecate's facility. The base case reflects information about existing and planned connections to the grid.

The base case includes information about so-called "nonjurisdictional projects." Nonjurisdictional projects are small,

---

[3] Agreements between New York's transmission owners and the System Operator empower it to operate the transmission grid. *See* Central Hudson Gas & Electric Corp., 83 FERC ¶ 61,352, at 62,405, 62,413 (1998) (describing that relationship).

local electricity generators, not subject to FERC's jurisdiction. *See* 16 U.S.C. § 824(b)(1). They connect to the grid following different rules, often set by the transmission-grid owner — here, Central Hudson.[4]

For Hecate's interconnection study, the System Operator included six nonjurisdictional projects in its base case. Including those projects meant that Hecate's connection was projected to require grid upgrades. So the System Operator found that Hecate was required to pay $10 million in upgrade costs.

C

Unwilling to pay, Hecate challenged the System Operator's decision before FERC. Hecate argued that the System Operator's tariff did not give Hecate notice that the six nonjurisdictional projects would be included in its interconnection study.

Hecate contended that the tariff should have included information about Central Hudson's practices for reporting nonjurisdictional projects to the System Operator. Under its "inclusion rule," Central Hudson reports projects when they are "firm." JA 28-29. Central Hudson views a project as "firm" once its owner has signed an interconnection agreement and paid at least twenty-five percent of its costs. Hecate claimed that under the Federal Power Act, that rule is a "practice[ ] . . .

---

[4] FERC may regulate only *interstate* electricity transmission. With some exceptions, it does "not have jurisdiction . . . over facilities used in local distribution." 16 U.S.C. § 824(b)(1). And it may not regulate the retail sale of electricity, which is reserved to the states. *Id.* § 824(a). That means that transmission owners or regional regulators set the rules under which purely local generators connect to the grid without input from FERC.

affecting . . . rates and charges" that should have been stated in the tariff. 16 U.S.C. § 824d(c).

FERC rejected that argument. It found that the System Operator's tariff *did* give notice that it would include nonjurisdictional projects in its interconnection analysis. FERC later affirmed its decision when it denied Hecate's petition for rehearing.

Unhappy with FERC's decision, Hecate petitioned for judicial review in this court. Because we agree with FERC that the tariff was detailed enough, we deny Hecate's petitions.

II

Before getting to the merits, a brief detour to explain why Hecate has standing.

To have standing, Hecate must show that it was injured by FERC's decision and that "a favorable ruling from [this] court would redress that injury." *West Virginia v. EPA*, 142 S. Ct. 2587, 2606 (2022) (cleaned up).

The System Operator intervened in this case, claiming that Hecate lacks standing. It says that because there is an independent and sufficient basis on which to affirm FERC's decision, ruling for Hecate would not redress its injury. *See Fogo De Chao (Holdings) Inc. v. DHS*, 769 F.3d 1127, 1149 (D.C. Cir. 2014).

The System Operator's argument relies on a second issue addressed by FERC's decision in this case. In addition to Hecate's tariff-based challenge, FERC also rejected Hecate's argument that the System Operator processed Hecate's connection request so slowly that it behaved "unjust[ly] or

unreasonabl[y]." JA 943; *see* 16 U.S.C. § 824d. Hecate did not seek review of FERC's ruling on that second challenge.

The System Operator says that was a fatal error. It contends that because FERC found that the System Operator reasonably processed Hecate's grid-connection request, it does not matter how this court rules on Hecate's tariff-based argument.

But despite the System-Operator's say-so, FERC's ruling on Hecate's processing-time argument is not an independent ground for upholding its decision on the tariff. Even if the System Operator processed Hecate's request fairly, it was still required to include in its tariff all practices affecting rates. *Id.* § 824d(a), (c). And if this court holds that the tariff was *not* detailed enough, on remand FERC could remedy Hecate's injury by finding that it is not responsible for the $10 million upgrade. *Cf.* Cargill Power Markets, LLC, 141 FERC ¶ 61,141, at 61,767 (2012) (describing a settlement that put a generator "back into the . . . queue with priority established by [its] original request date").

We may thus reach the merits of Hecate's petitions.

III

Our Administrative Procedure Act review of FERC's decision is deferential. 5 U.S.C. § 706(2)(A). The Federal Power Act's "amorphous," requirement that tariffs include "practices affecting rates" means that FERC has "broad discretion" in giving the Act "concrete application." *City of Cleveland v. FERC*, 773 F.2d 1368, 1376 (D.C. Cir. 1985). "So long as proper procedures have been followed, intelligible reasons have been given, and factual findings are supported by record evidence, [FERC] must be affirmed." *Id.* at 1377.

8

A

Hecate's petitions fail because the System Operator's tariff was detailed enough. The tariff gave notice that the System Operator would include nonjurisdictional projects in its interconnection study to determine responsibility for upgrade costs.

To start, tariffs need not include *all* practices affecting rates. "[I]t is no more possible to set forth *all* of the practices affecting rates . . . than it is to set forth *all* of the terms and conditions of a contract, leaving nothing whatever to be implied." *Id.* at 1370. Instead, a tariff need include "only those practices that affect rates and service *significantly*, [and] that are realistically *susceptible* of specification." *Id.* at 1376. The tariff need not include mere implementation details.

Here, FERC's order pointed to three cross-referenced sections of the tariff to find sufficient notice that the interconnection study would include information about nonjurisdictional projects. Consider each in turn:

Tariff Attachment Z, § 32.5: Stipulates that a "base case" will be "used for Interconnection Studies by the [System Operator]." JA 116.

Tariff Attachment X, § 30.2.3: Defines "Base Case Data" to be the "power flow, short circuit[,] and stability databases . . . from the last completed Annual Transmission Reliability Assessment conducted pursuant to Attachment S." JA 660.

Tariff Attachment S, § 25.5.5.1(vii): Notes that the Annual Transmission Reliability Assessment will include "all other changes to existing facilities . . . that are . . . reported by Market Participants to the [System

Operator] as scheduled to occur during the five[-]year cost allocation study planning period." JA 224.[5]

Putting those provisions together, we agree with FERC that the tariff gives notice that base-case data will include information about nonjurisdictional projects. First, Attachment Z tells us that an interconnection study — like the one conducted for Hecate's connection request — will use a "base case" to determine the impact of the new connection. Next, Attachment X defines the data used in a "base case" to be those data in the latest "Annual Transmission Reliability Assessment." JA 660. Finally, Attachment S provides that the Reliability Assessment will include information provided by "Market Participants" (like Central Hudson) about "changes to existing facilities" in the next five years. JA 224.[6] The nonjurisdictional projects count as "changes to existing facilities" because they increase (and thus "change") the load on "Central Hudson's 69 kV line between the North Catskill and Coxsackie Substations" (an "existing facility"). JA 224, 924-25.

Our reading of Attachment S, Section 25.5.5.1(vii) is confirmed by another subsection in that provision. Section 25.5.5.1 lists the information included in the base case.

---

[5] During this litigation, amendments to the tariff renumbered the sections in Attachment S. FERC's order and this opinion use the updated section numbers. The version of the tariff in the record uses the outdated section numbers. The relevant provision here — § 25.5.5.1 — is listed in the record as § 25.5.5.2. The current § 25.5.5.1, on which our analysis focuses, applies to "Class Years subsequent to Class Year 2017." JA 224. The old version of § 25.5.5.1 (which no longer appears in the tariff) applied to Class Year 2017.

[6] New York Independent System Operator Open Access Transmission Tariff, § 1.13 ("Market Participants include: . . . Transmission Owners.").

Subsection (vii) is a catch-all provision at the end of that list ("all *other* changes").  JA 224 (emphasis added).  When a catch-all follows a list of enumerated items, courts read the catch-all to cover things closely related to the list.  *See, e.g.*, *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789-90 (2022).  Here, one item in the list is helpful.  Subsection (vi) states that the base case will include nonjurisdictional "*transmission* projects . . . identified as 'firm' by the Connecting Transmission Owner."  JA 223 (emphasis added).  By its own terms, that provision does not cover the nonjurisdictional *generation* project at issue here.  But it does strongly suggest that generation projects "identified as 'firm'" by a transmission owner (like the projects at issue here) fall within the catch-all in subsection (vii).  *Id.*

Because the tariff gave Hecate fair notice that nonjurisdictional projects would be used in the base case, the tariff included all "practices . . . affecting . . . rates," as required by the Federal Power Act.  16 U.S.C. § 824d(c).  Thus, FERC correctly concluded that the System Operator had not impermissibly adopted a practice that was not in its tariff.

B

Pushing back, Hecate says the tariff should have *expressly* included Central Hudson's inclusion rule for reporting nonjurisdictional projects to FERC.  Relying on *City & County of San Francisco v. FERC*, Hecate claims that the inclusion rule was "realistically susceptible of specification" and "affect[ed] rates and service significantly."  24 F.4th 652, 661 (D.C. Cir. 2022) (cleaned up).

That may be so.  But even specifiable practices that significantly affect rates need not be included if they are clearly

implied by the tariff's express terms. *City of Cleveland*, 773 F.2d at 1376.

That is the case here. The tariff's express terms said the System Operator would include in its interconnection study information about "changes to existing facilities" reported to it by transmission owners like Central Hudson. A clear implication of that provision is that transmission owners would have some system for reporting changes to the System Operator. In other words, Central Hudson's reporting of nonjurisdictional projects would have been "generally understood" from the tariff's provisions. *Id*. Thus, FERC correctly exercised its "broad discretion" to decide what should be included in a tariff when it found that including Central Hudson's inclusion rule was unnecessary. *Id*.

Finally, Hecate contends that FERC's reading of the tariff cannot be squared with other tariff provisions. But it forfeited that argument by failing to make it to FERC on rehearing. *See* 16 U.S.C. § 825*l*(b) (a petitioner may raise only arguments that it "urged before [FERC] in [an] application for rehearing").

Despite that failure, Hecate may raise its argument on appeal if it had "reasonable ground[s]" for not making it to FERC. 16 U.S.C. § 825*l*(b). And here, Hecate suggests that FERC's rehearing order was the "first time" that FERC relied upon "the Base Case rules" to find that the tariff gave enough detail. Pet. Final Reply Br. 19. So Hecate says that it could not have made counterarguments based on those rules until after FERC issued its rehearing order.

We disagree. FERC's initial order relied on the same tariff provisions — § 32.5 of Attachment Z, § 30.2.3 of Attachment X, and § 25.5.5.1(vii) of Attachment S — as its rehearing

order.  Because Hecate could have raised, but did not raise, its argument to FERC on rehearing, it cannot make it now.

\* \* \*

Because we agree with FERC that the System Operator's tariff had enough detail, we deny Hecate's petitions for review.

*So ordered.*