# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 12, 2024　　　　　　Decided June 21, 2024

No. 23-1042

HUSKY MARKETING AND SUPPLY COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

MPLX OZARK PIPE LINE LLC,
INTERVENOR

———

Consolidated with 23-1043

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Gregory S. Wagner* argued the cause for petitioner. With him on the briefs were *Richard E. Powers, Jr.* and *Joseph R. Hicks*.

*Scott Ray Ediger*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on

the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor. *Robert J. Wiggers* and *Robert B. Nicholson*, Attorneys, U.S. Department of Justice, entered appearances.

*Elizabeth B. Kohlhausen* argued the cause for intervenor in support of respondents. With her on the brief were *Dean H. Lefler* and *Deborah R. Repman*.

Before: MILLETT, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge:* Two customers of a crude-oil pipeline petition for review of orders issued by the Federal Energy Regulatory Commission (FERC) approving the pipeline's application to charge market-based rates for its shipping services. The petitioners contend the Commission adopted an arbitrary and capricious definition of the relevant geographic destination market for the pipeline's services when analyzing whether it had market power. We disagree and deny their petitions for review.

## I.  Background

Petitioners Husky Marketing & Supply Company and Phillips 66 Company ship crude oil on the MPLX Ozark, a 22-inch-diameter pipeline that runs 433 miles from Cushing, Oklahoma to Wood River, Illinois. MPLX Ozark is owned by MPLX LP, a master limited partnership the general partner of which is a wholly owned subsidiary of Marathon Petroleum Corporation.



In December 2018, Marathon filed with the FERC an application for permission to charge market-based rates for transporting crude oil from Cushing to Wood River on the MPLX Ozark. Marathon asserted it did not have market power in the relevant geographic origin and destination markets and therefore should be allowed to charge market-based rates rather than cost-indexed rates, which are the default rates for oil pipelines regulated by the Commission. *See, e.g.*, *MarkWest Mich. Pipeline Co. v. FERC*, 646 F.3d 30, 31–33 (D.C. Cir. 2011).

Husky and Phillips intervened to oppose Marathon's application, asserting the carrier's proffered definition of the relevant destination market, *viz.*, the St. Louis–St. Charles–Farmington Bureau of Economic Analysis (BEA) economic area, was incorrect. They claimed the properly defined destination market was Wood River, a city of 10,000 in which they alleged MPLX Ozark had market power.

The Commission referred the matter to an administrative law judge (ALJ) who, after an evidentiary hearing, found the correct destination market was the narrower Wood River market advanced by Husky and Phillips, rather than the broader St. Louis BEA Economic Area advanced by Marathon. Both Marathon and the Petitioners filed exceptions to the ALJ's decision.

The Commission unanimously reversed the ALJ's decision. *MPLX Ozark Pipe Line LLC*, 180 FERC ¶ 61,053 (2022). Rather than accept Marathon's broad St. Louis BEA definition, however, the Commission concluded the correct geographical destination market was Wood River together with Patoka, Illinois — a small town about 75 miles to the east that is the downstream destination for a substantial majority of the crude oil shipped to Wood River on the MPLX Ozark.

The FERC reached its destination-market conclusion based primarily upon its determination that if MPLX Ozark tried to exercise market power by raising prices or restricting output, then its shipping customers could easily switch to other Patoka-bound pipelines that do not go through Wood River. The Commission rejected the ALJ's analysis because it did not consider pipelines that do not go through Wood River to reach Patoka and beyond. 180 FERC ¶ 61,053, at para. 24.

In defining the destination market to be Wood River, the ALJ had relied heavily upon the hypothetical monopolist test performed by the Commission staff.[*] The Commission concluded that facts in the record about "market participants provide[d] sufficient information to define the relevant geographic market . . . without the consideration of a detailed hypothetical monopolist test." *Id.* at para. 23. It then reasoned, based upon market-share data, that the Wood River–Patoka market was a competitive one in which MPLX Ozark did not have market power, and it approved Marathon's application for permission to charge market-based rates.

---

[*] The "hypothetical monopolist" or "SSNIP" test is a tool used in antitrust cases, which often hinge on the definition of the relevant product or geographic market. The test analyzes whether a hypothetical firm with a monopoly in a certain geographic area (or product market) would profit from a "small but significant and non-transitory increase in price" — usually set at five percent. The profitability of a SSNIP depends primarily upon the number of a firm's customers that would stop purchasing from it in response to the SSNIP. If that number is high enough that the SSNIP would not be profitable for the monopolist, then the market has been drawn too narrowly and must be expanded. The test repeats this process until the SSNIP would be profitable for the monopolist, at which point the market is deemed properly defined.

Husky and Phillips petitioned for rehearing and moved to reopen the record, but the Commission denied their requests. *MPLX Ozark Pipe Line LLC*, 181 FERC ¶ 61,242 (2022). Husky and Phillips now petition for review. We have jurisdiction under 28 U.S.C. §§ 2321, 2342 and 42 U.S.C. § 7192(a). *See* 49 U.S.C. app. § 17(10) (1988); *see also Ass'n of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1432 n.14 (D.C. Cir. 1996); *Earth Res. Co. v. FERC*, 628 F.2d 234, 235 (D.C. Cir. 1980).

## II.      Standard of Review

We review the FERC's orders under the "arbitrary and capricious" standard, which is deferential and narrow in scope, prescribed by the Administrative Procedure Act (APA), 5 U.S.C. § 706(b)(A). *LSP Transmission Holdings II, LLC v. FERC*, 45 F.4th 979, 991 (D.C. Cir. 2022); *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022). "So long as proper procedures have been followed, intelligible reasons have been given, and factual findings are supported by record evidence, FERC must be affirmed." *Hecate Energy Greene Cnty. 3 LLC v. FERC*, 72 F.4th 1307, 1312 (D.C. Cir. 2023) (cleaned up).

## III.      Analysis

Husky and Phillips challenge only the FERC's conclusion that Wood River and Patoka constitute the correct relevant geographic destination market. They do not challenge the reasonableness of the Commission's finding that the combined Wood River–Patoka market for deliveries of crude oil is competitive. The only issue before us, therefore, is whether the Commission gave "intelligible reasons" for its conclusion that Wood River and Patoka together constitute the correct destination market in which to analyze whether the MPLX Ozark has market power for its shipping services. *Hecate Energy*, 72 F.4th at 1312. We hold that it did.

For more than a century, federal law has made it unlawful for a pipeline company to charge a rate that is not "just and reasonable" for the transportation of crude oil in interstate commerce.[†] Under longstanding statutory requirements, the owner of an oil pipeline must file proposed rates with the relevant regulatory agency — now the FERC — and receive its approval before the pipeline may charge its customers those rates. A Commission regulation provides that a pipeline ordinarily may charge its customers no more than a "ceiling" rate that reflects

---

[†] Curiously, the "just and reasonable" rate requirement for oil pipelines is nowhere to be found in the current U.S. Code. The requirement was created by the Lodge Amendment to the Hepburn Act of 1906, which extended to oil pipelines the "just and reasonable" rate requirement the Interstate Commerce Act of 1887 had imposed upon railroads. *See* Hepburn Act of 1906, Pub. L. No. 59-337, ch. 3591, § 1, 34 Stat. 584, 584; Interstate Commerce Act of 1887, ch. 104, § 1, 24 Stat. 379, 379. The Interstate Commerce Commission administered the provision until 1977, when the Congress transferred statutory authority over it to the newly created FERC. Department of Energy Organization Act, Pub. L. No. 95-91, § 402(b), 91 Stat. 565, 584. The next year, the Congress repealed and replaced most of the Interstate Commerce Act, including the "just and reasonable" rate provision. Act of October 17, 1978, Pub. L. No. 95-473, § 4, 92 Stat. 1337, 1466–70. The 1978 Act, however, exempted from repeal the statutory provisions regulating the rates for oil transport by pipeline that the Congress had transferred to FERC the previous year, as they had existed on October 1, 1977. *See id.* § 4(c), 24 Stat. at 1470. The House of Representatives' Office of the Law Revision Counsel deleted both the repealed and the unrepealed provisions of the Act from the U.S. Code. The Office included the unrepealed provisions in the 1988 edition of the Code as an appendix to Title 49, *see* 49 U.S.C. app. § 1 *et seq.* (1988), but it has not included them in any subsequent editions. Although the provisions are now absent from the U.S. Code, the "just and reasonable" rate requirement they impose upon oil pipelines and the regulatory authority they confer upon the FERC remain the law.

the pipeline's costs-of-service and is adjusted annually by the FERC in accordance with the Bureau of Labor Statistics' Producer Price Index for Finished Goods. *See* 18 C.F.R. § 342.3.

Under another Commission regulation, however, an oil pipeline may charge its customers "market-based" rates that exceed its "ceiling" rate if the pipeline first establishes it does not have market power in the relevant geographic origin and destination markets. *See* 18 C.F.R. §§ 342.4(b) & 348.1; *see also* Order No. 572, Market-based Ratemaking for Oil Pipelines, 59 Fed. Reg. 59,148, 59,149–51 (1994). In its decisions, the Commission has defined the relevant geographic market for a pipeline to be "the area in which a shipper may rationally look for transportation service." *E.g.*, *Saddlehorn Pipeline Co., LLC*, 181 FERC ¶ 61,021, at para. 12 (2022); *see also, e.g.*, *White Cliffs Pipeline, LLC*, 173 FERC ¶ 61,155, at para. 32 (2020) ("[T]he geographic market . . . include[s] alternatives to the pipeline that are available to shippers in the event the applicant pipeline raises rates above competitive levels").

Courts have long held the "just and reasonable" rate requirement in the statutes that govern the regulation of natural gas and electricity do not require the Commission to use any particular methodology or formula when it sets or approves rates. *E.g.*, *Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 224–25 (1991); *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 602 (1944); *S. Cal. Edison Co. v. FERC*, 717 F.3d 177, 182 (D.C. Cir. 2013). We see no reason, and the parties suggest no reason, to read the just and reasonable rate requirement for oil pipelines any more prescriptively.

The FERC does not require a pipeline owner to use "any particular geographic market definition" in its application to

charge market-based rates. Market-based Ratemaking for Oil Pipelines, 59 Fed. Reg. at 59,154. Nor does the Commission limit itself to any specific methodology when it defines the appropriate geographic market in which to evaluate an application. *E.g.*, *Guttman Energy, Inc.*, 161 FERC ¶ 61,180, at para. 183 (2017). It has determined relevant geographic markets in some cases using the hypothetical monopolist test, *e.g.*, *White Cliffs Pipeline*, at paras. 24–26, 31–34, and in others using a simple fact-based evaluation of the alternative choices available to the customers served by the applicant pipeline, *e.g.*, *Marketlink, LLC*, 169 FERC ¶ 61,194, at paras. 12–14 (2019).

In the present case, the Commission took the latter course. It concluded that "the appropriate geographic destination market should include both Patoka and Wood River because these areas contain the alternatives that would be available to shippers if MPLX Ozark attempted to exercise market power." 180 FERC ¶ 61,053, at para. 20.

The FERC adequately supported this conclusion. It is undisputed that a substantial majority of the crude oil shipped on the MPLX Ozark to Wood River — including all of Husky's MPLX Ozark volume — is transported onward to Patoka. Nor do the petitioners dispute that other Patoka-bound pipelines that do not go through Wood River are available alternatives for MPLX Ozark's shipping customers.

In light of these facts, it was entirely logical for the FERC to reject the conclusions of its staff and the ALJ and instead conclude that limiting the geographic destination market to Wood River alone would fail to account for other pipelines to which MPLX Ozark's customers could turn in order to ship their crude oil to Patoka "in response to a SSNIP on MPLX Ozark." 180 FERC ¶ 61,053, at paras. 23–24. Husky and

Phillips have not challenged the Commission's conclusion by, for example, showing the alternative pipelines have capacity limitations that would prevent them from serving customers leaving the MPLX Ozark. We therefore hold the Commission did not act arbitrarily or capriciously when it concluded Wood River and Patoka together, rather than Wood River alone, represent the area in which a shipper may rationally look for transportation service.

Husky and Phillips fault the FERC for failing to do its own "empirical analysis" of market data, which we take to mean its own SSNIP test, to support its conclusion that MPLX Ozark's shipping customers could use alternative Patoka-bound pipelines that did not go through Wood River in response to a SSNIP on MPLX Ozark. They contend the FERC could not determine whether other pipelines would be an alternative option for MPLX Ozark customers without regard to the prices those pipelines would charge. More specifically, they wanted the FERC to "consult market data to derive a competitive price for transportation service to Wood River," "evaluate market prices of delivered crude oil at Wood River or Patoka," and analyze "the willingness of shippers to shift to alternatives providing transportation to locations outside of Wood River." On the record before us, and particularly in the absence of any challenge to the competitiveness of the Wood River–Patoka market, the FERC is under no obligation to demonstrate that prices on alternative pipelines would be acceptable to an applicant's customers absent a reason to think they would not be, and the petitioners have suggested none. Were we to hold otherwise, then the Commission could never define a market without performing a detailed SSNIP test, even when the competitiveness of the market is undisputed. As we have said, the Commission is not so constrained by the requirement that rates be just and reasonable.

Husky and Phillips additionally fault the Commission for using the term "SSNIP" when describing its chosen geographic market, *see* 180 FERC ¶ 61,053, at para. 24 ("In response to a SSNIP on MPLX Ozark, shippers traveling into Patoka have several options"), when it did not actually do a SSNIP test, which would involve estimating the volume of crude that shippers would shift away from MPLX Ozark. Rather, the Commission merely "eyeballed" the market situation based upon the facts in the record. What it saw was sufficiently compelling that it was not arbitrary or capricious for the Commission reach its conclusion without doing its own SSNIP test.

Quoting our decision in *Mobil Pipe Line Co. v. FERC*, 676 F.3d 1098 (2012), Husky and Phillips contend the FERC violated what we have termed its "statutorily required" duty to "adhere to basic economic and competition principles" when it defined the geographic destination market in this case without analyzing real-world market data. Their argument misconstrues our decision in *Mobil Pipe Line.* In that case, the FERC concluded a pipeline company had market power and denied its application for market-based rates. We held the Commission's decision was arbitrary and capricious because the record showed the company had only a three-percent share in a market with "many alternative outlets available" to crude-oil shippers. 676 F.3d at 1103–04. We concluded our decision thus:

> In sum, when an agency is statutorily required to adhere to basic economic and competition principles — or when it has exercised its discretion and chosen basic economic and competition principles as the guide for agency decisionmaking in a particular area, as FERC did in Order No. 572 — the agency must adhere to

> those principles when deciding individual cases.

*Id.* at 1104.

Our statement in *Mobil Pipe Line* did not mean, and should not be read to imply, that the FERC's use of the term "market power" in its regulations categorically requires it to ground its geographic-market determinations in detailed economic analyses. The key word in our statement was "basic." We did not read the Commission's prior orders to have imposed upon itself a mandate to support its market-definition and market-power determinations with detailed economic analysis. Rather, we recognized merely that the Commission has chosen to follow "basic economic and competition principles as the guide for [its] decisionmaking in a particular area." *Id.* That a firm has market power when it can profitably and sustainably raise its prices above those of its competitors, and that an adequate supply of alternative options for the firm's customers will defeat its ability to do so, are just such "basic economic and competition principles." *See, e.g.*, *Elizabethtown Gas Co. v. FERC*, 10 F.3d 866, 870–71 (D.C. Cir. 1993) (approving the FERC's conclusion that the "adequate divertible gas supplies" available to the customers of a natural-gas pipeline would prevent the pipeline from exercising market power by raising its prices above competitive levels).

To be sure, some cases may require a more detailed analysis than the FERC undertook here. The agency remains free to use empirical analyses and hypothetical monopolist tests as appropriate. All we hold today is that the FERC was not re-

quired to perform any additional empirical analysis in this case.‡

### IV.  Conclusion

In sum, we hold it was not arbitrary or capricious for the FERC to conclude, in light of the record before it, that Wood River and Patoka together constituted the relevant geographic destination market for MPLX Ozark's crude-oil shipping services.  For the foregoing reasons, the petitions for review are

*Denied.*

---

‡ We reject the petitioners' contention that the FERC's conclusion regarding the geographic destination market was arbitrary and capricious in light of MPLX Ozark's relationships with shipper affiliates. The Commission considered and reasonably addressed whether these relationships might affect its determination. *See* 180 FERC ¶ 61,053, at paras. 25–27.  As the Commission pointed out, the petitioners' arguments rested upon an erroneous reading of economic evidence and ignored the role of unaffiliated shippers on non-Wood River pipelines. *Id.* at para. 25 & n.62.